UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 23-cv-22080-ALTMAN/REID

MARIA HAMLIN,

       Plaintiff,

vs.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

       Defendant.

_____/

### DEFENDANT'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Defendant, Carnival Corporation (hereinafter "Carnival"), by and through undersigned counsel and pursuant to Rule 15 of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of the Southern District of Florida, hereby responds to Plaintiff's Motion for Leave to File her First Amended Complaint, and states as follows:

### BACKGROUND

This is a maritime personal injury case in which Plaintiff alleges that she slipped and fell on the pool deck of the Carnival *Vista* on April 8, 2022. [D.E. 1]. Plaintiff's counsel sent a representation letter to Carnival's in-house counsel on June 10, 2022. See Plaintiff's Representation Letter, attached as **Exhibit A**. Plaintiff's counsel then filed suit against Carnival on June 5, 2023. [D.E. 1]. Plaintiff's Complaint contained a one-count negligence claim against Carnival. [D.E. 1, p. 2-3]. On August 21, 2023, this Honorable Court entered an Order setting trial and the pre-trial schedule. [D.E. 11]. Per the Order, the deadline to file a motion to amend the pleadings was October 6, 2023. [D.E. 11, p. 2]. Moreover, Plaintiff never filed a motion for extension of time to amend her Complaint.

However, contrary to Plaintiff's assertion that one of her treating physicians recently diagnosed her femoral neuropathy as being casually linked to internal bleeding she experienced during her thirty-six-hour immobilization aboard the Carnival *Vista*, Plaintiff treating physicians' have documented this link since April 2022. On April 16, 2022, Dr. Michael Rosenblatt, at Clear Lake Rehabilitation facility, noted that after Plaintiff's incident aboard the Carnival *Vista*,

> [Plaintiff] had instant pain and required to be kept in the medical wing on the ship for approximately two days prior to docking at the Port of Galveston. She was transferred to UTMB Galveston and admitted. She was brought to the OR and is S/P CIMN performed by Dr. Hagedorn on 4/10/22. Post operatively she was noted to have a acute blood loss anemia felt to be a combination of the fracture and post surgery. Her Hgb dropped to 6.7. She required a unit of PRBC to be transfused. On 4/13 her hgb notes to be 7.6.

*See* Clear Lake Rehabilitation facility April 16, 2022, report, attached as **Exhibit B**.

Further, Plaintiff was evaluated by Dr. Denis Patterson, at Nevada Advanced Pain Specialists. In a November 11, 2022, update Dr. Patterson noted,

> Pt reports she was on a cruise and slipped/fell on deck in April '22. Pt reports she had a femoral fracture and had to wait to come back to port to have surgery - kept leg in externally rotated position. Pt also reports she lost a lot of blood - feels like they were only worried about hip fracture and putting in rod.

*See* Dr. Patterson's February 3, 2023, report, attached as **Exhibit C**.

Likewise, Plaintiff was evaluated by Dr. Byung Chan Ahn, at Alliance Neurology Consultants. In his November 21, 2023, report Dr. Ahn noted,

> [Patient] with a PMH of femoral neck fracture (4/2022) presents with persistent medial L thigh pain since her injury, sustained from slipping on a cruise ship pool deck. Reports there was a 36 hour delay before surgical intervention as the ship had to make its way back to land. Additionally, reports experiencing internal bleeding prior to the surgery, leading to two blood transfusions.

*See* Dr. Ahn's November 21, 2023, report, attached as **Exhibit D**.

Dr. Ahn also noted in his January 9, 2024, report that,

> [Patient] with a PMH of femoral neck fracture s/p surgical fixation (4/2022) and revision (2/2023), presents with persistent medial L thigh pain since femoral neck fx sustained from slipping on a cruise ship pool deck. There was a 36-hour delay

before surgical intervention. During this time, patient experienced significant internal bleeding leading to two blood transfusions at time of arrival.

*See* Dr. Ahn's January 9, 2024, report, attached as **Exhibit E**.

As such, this is not newly discovered evidence, as Plaintiff contends. There is a clear record trail dating back to April 2022, which demonstrates that Plaintiff's treating physicians believed her femoral neuropathy may have been casually linked to the thirty-six-hour immobilization and loss of blood.

## MEMORANDUM OF LAW

### I.      Legal Standard

Where a party seeks leave to amend after the deadline to do so has passed, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a). *Bueno v. Univ. of Miami*, 2023 U.S. Dist. LEXIS 24452, at *3 (S.D. Fla. Feb. 13, 2023). That is, the movant must also show "good cause" under Federal Rule of Civil Procedure 16(b) to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts*, LLC, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. *See* Fed. R. Civ. P. 15(a)(2). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would

cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff cites *Wolf v. Celebrity Cruises, Inc.*, to establish the legal standard to show good cause under Rule 16(b). 304 F.R.D. 698, 699 (S.D. Fla. 2015) ("To show good cause under Rule 16(b), a party must establish that, despite its diligence, the deadline could not be met."). However, the *Wolf* Court provided additional factors to be considered in the analysis of whether a party acted with reasonable diligence,

> Three factors may be considered to determine whether a party has acted with reasonable diligence under the Rule: whether (1) the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) the information supporting the proposed amendment was available to the plaintiff; and (3) even after acquiring information, the plaintiff delayed in asking for amendment. *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (affirming denial of an untimely motion to amend a complaint; "this good cause standard precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'") (citing Fed. R. Civ. P. 16 Adv. Comte. Note).

*Id*.

## II.     Plaintiff Has Failed to Articulate Good Cause

Good cause for Plaintiff to be granted leave to amend her Complaint does not exist. Plaintiff states that "[g]ood cause will generally exist when evidence supporting the proposed amendment could not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." [D.E. 25, p. 2]. Plaintiff cites *Vircigilo v. Work Train Staffing, LLC* in support of his assertion. 674 F. App'x. 879, 885 (11th Cir. 2016) (holding the district court "clearly" did not abuse its discretion in finding good cause to grant plaintiff's motion for leave to amend where "[p]laintiff did not have information necessary to assert a viable [] claim until after the scheduling order amendment deadline had expired.") However, *Vircigilo* is easily distinguishable from the instant action. In *Vircigilo*,

The scheduling order set a deadline of May 30, 2013 for amending the pleadings. On June 14, 2013, which was about two weeks after the deadline expired, Plaintiff filed a motion for leave to amend the complaint to add the COBRA notice claim on which he ultimately prevailed at summary judgment. Defendants argue that the district court erred by granting Plaintiff's motion and allowing the amendment. . . . The district court consented to Plaintiff's amendment, finding good cause for the delay because Plaintiff did not learn until his deposition on June 12, 2013 that Defendants had in fact purchased insurance for him in January 2012 (before retroactively cancelling it) and that he was thus arguably a covered employee entitled to COBRA notice at the time of his termination. . . . There clearly was no abuse of discretion here. The record shows that in spite of his diligence, Plaintiff did not have the information necessary to assert a viable COBRA notice claim until after the amendment deadline expired.

*Id*.

Here, Plaintiff and her counsel have had access to medical records dating back to April 2022, which document that Plaintiff's femoral neuropathy may have been casually linked to the thirty-six-hour immobilization and loss of blood. It is incumbent on Plaintiff's counsel to investigate their client's claim and the extent and causes of Plaintiff's injuries. Plaintiff's counsel has been representing Plaintiff since June 10, 2022. [**Ex. A**]. Plaintiff's counsel had close to one (1) year to investigate the extent and causes of Plaintiff's injuries prior to filing suit against Carnival. Likewise, Plaintiff and her counsel possessed unbridled access to her medical records and history. Even before Plaintiff's Complaint was filed on June 5, 2023, counsel should have begun the process of obtaining and reviewing Plaintiff's medical records and history. A diligent investigation of Plaintiff's medical records by counsel would have revealed the records from 2022 and early 2023, cited by Defendant above. As such, counsel's claim that they "did not receive this information until December 20, 2023," does not withstand scrutiny. [D.E. 25, p. 3]. Unlike the plaintiff in *Vircigilo*, who did not learn of the relevant information until a year and a half later.

Further, Plaintiff herself testified that she has known for over a year and a half that her treating physicians diagnosed her femoral neuropathy as being causally linked to the immobilization and loss of blood.

> Q. Now, you mentioned earlier in your deposition that you suffer from femoral neuropathy? A. Yes. Q. Why is that? THE WITNESS: It's my understanding that the neuropathy is due to the pressure of the blood pressing on my nerves and sitting in that prone position for that long of a time. That is my understanding, based on all the information I have gathered from the multiple doctors throughout this past year and a half. That has been the determination to explain why I have the femoral damage or the nerve damage. BY MR. ROBINSON: Q. Which doctor, specifically, has told you that? THE WITNESS: Specifically, Dr. Patterson's office, Dr. Bray, and the neurologist, the recent neurologist, all confirmed to me that that was – that that type of a thing could be the reason for my damage.

*See* Plaintiff's deposition transcript, attached as **Exhibit F**, p. 252, lines 22-25, p. 253, lines 2-22.

Clearly, Plaintiff's assertion that "the proposed amendment is premised upon recently discovered evidence obtained during discovery and investigation of this matter," is inaccurate. [D.E. 25, p. 3]. Plaintiff has known of this diagnosis far before December 20, 2023. Plaintiff's counsel should have been investigating and developing the "additional counts of negligence pertaining to Defendant's failure to properly treat, evaluate, and/or diagnose Plaintiff's injuries as well as Defendant's failure procure emergency evacuation services for her," as far back June 10, 2022, when counsel retained Plaintiff as a client. [D.E. 25, p. 2]. The facts pertaining to Plaintiff's femoral neuropathy diagnosis were readily available to Plaintiff and her counsel. Plaintiff did not require discovery from Defendant in order to obtain this evidence.

However, Plaintiff's counsel failed to act with diligence and is now seeking leave to amend Plaintiff's Complaint over three (3) months past the amendment deadline. Plaintiff's counsel themselves state that "on November 21, 2023, Plaintiff was evaluated by Dr. Ahn . . . where she was informed that her chronic left anteromedial thigh pain is causally linked to the significant internal bleeding she experienced during her thirty-six-hour immobilization." [D.E. 25, p. 3]. Dr. Ahn's report denoting this diagnosis was completed and signed on November 24, 2023. [**Ex. D**, p. 5]. However, Plaintiff's claims that they "did not receive this information until December 20, 2023. [D.E. 25, p. 3]. Plaintiff provides no explanation for this delay in her Motion for Leave. [D.E. 25]. A diligent legal representative should have sought to obtain their client's medical records as soon

as possible or should have communicated with their client to determine the outcome of the latest medical evaluation.

Then upon receiving this information, Plaintiff's claims to have "contacted Dr. John Bradberry M.D., . . . to obtain a secondary opinion and to request that he review Plaintiff's shipboard medical records to determine whether Plaintiff's femoral neuropathy is causally related to the medical care Plaintiff received onboard the Vessel as well as Defendant's thirty-six-hour delay in evacuating Plaintiff." [D.E. 25, p. 3]. Plaintiff then states that on "January 12, 2024, Dr. Bradberry completed his review of the Plaintiff's shipboard medical records and confirmed for the undersigned that, based on a reasonable degree of medical certainty, there exists a causal link between Plaintiff's femoral neuropathy and the significant internal bleeding she experienced during her thirty-six-hour immobilization," which caused another three (3) week delay in Plaintiff filing her Motion for Leave. [D.E. 25, p. 3]. Plaintiff finally filed her Motion for Leave on January 12, 2024. [D.E. 25]. Interestingly, this is the first instance in which Defendant has learned of Dr. Bradberry. Plaintiff did not disclose Dr. Bradberry or his review of Plaintiff's shipboard medical records prior to filing her Motion for Leave, despite Plaintiff's Rule 26(e) obligation to supplement disclosures and responses.

In applying the three factors set out by the *Wolf* Court to determine whether Plaintiff acted with reasonable diligence, it is clear that Plaintiff has not acted with reasonable diligence. 304 F.R.D. at 699. Here, Plaintiff "failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period," as a reasonable review of the records cited above would have alerted Plaintiff and her counsel to the relevant information. *Id*. Assuming *arguendo*, that Dr. Ahn's diagnosis is correct, Plaintiff has possessed knowledge of the relevant facts since before her Complaint was filed, as she herself stated in her deposition. [**Ex. F**, p. 252, lines 22-25, p. 253, lines 2-22]. As such, "the information supporting the proposed amendment was available to the

plaintiff." *Id*. Finally, "even after acquiring information, [P]laintiff [here] delayed in asking for amendment." *Id*.

In *Wolf*, this Court denied Plaintiff's motion to amend for some of the following reasons. (1) "There is no dispute that no motion for extension of time was ever filed for Plaintiff to amend his Complaint, nor was an amended complaint filed by that deadline;" (2) plaintiff filed their motion to amend eight (8) months after the deadline for amendments, here Plaintiff filed its Motion for Leave three (3) months past the deadline; (3) the motion to amend was simply too untimely; (4) plaintiff had sufficient facts prior to the expiration of the amendment deadline and plaintiff knew of those facts, as Plaintiff did here. *Id*. at *698-700. *See, e.g., Huang v. Carnival Corp.*, Case No:12-23345-Civ-UU (S.D. Fla. Aug. 27, 2013) (denying leave to amend to include supplemental Rule B admiralty claims against former defendants as untimely where amendment was sought two months after amendment deadline); *Stephens v. Georgia Dep't of Transp.*, 134 F. App'x 320, 322 (11th Cir. 2005) (district court did not abuse its discretion in denying motion to amend complaint for lack of good cause, which motion was filed over six months after the amendment deadline and the reason for delay was plaintiff's discovery of a new legal theory through additional research); *Ultimate Fitness Grp., LLC v. Anderson*, 2019 U.S. Dist. LEXIS 231070, 2019 WL 8810370, at *2 (S.D. Fla. Jan. 30, 2019) (denying motion for leave because "[a]lthough Plaintiff may not have learned of the facts that purportedly establish a claim against Anderson until after the August 13, 2018 amendment deadline, Plaintiff's failure to seek leave to amend until months later – and within 25 days of the close of discovery – amounts to undue delay that precludes a finding of good cause""); *Sream, Inc. v. Munjal Corp.*, 2019 U.S. Dist. LEXIS 231646, 2019 WL 9048996, at *1 (S.D. Fla. Mar. 26, 2019) (denying leave to amend affirmative defenses where defendant waited until five months after the amendment deadline passed and six weeks after discovering the basis for the proposed amendment); *BrandNamesWatches Int'l LLC v. PNC Bank, Nat'l Ass'n*, 2018

U.S. Dist. LEXIS 229407, 2018 WL 9538219, at *1 (S.D. Fla. June 1, 2018) (denying leave to amend where plaintiff waited until after mediation and a month before the close of discovery, which was at "such a late stage of these proceedings").

A lack of diligence in pursuing a claim is sufficient to show lack of good cause. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241, 1241 (11th Cir. 2009); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting that "carelessness is not compatible with a finding of diligence," and if the movant "was not diligent, the [good cause] inquiry should end."). An example of a lack of diligence is the failure to either assert a claim or timely amend when "the information supporting the proposed amendment to the [pleading] was available to the [movant] even before [a suit was filed]." *Sosa*, 133 F.3d at 1419. As such, Plaintiff this Honorable Court should deny Plaintiff's Motion for Leave, as Plaintiff was not diligent in timely seeking leave to amend, precluding a finding of good cause.

### III.     There is Substantial Reason to Deny Leave to Amend

"A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). All three factors are present here.

First, as discussed *supra*, Plaintiff did unduly delay in filing her Motion for Leave. The information linking Plaintiff's femoral neuropathy to the immobilization and blood loss has been available to Plaintiff since before she retained legal representation. *See* **Ex. A**; **Ex. B**; **Ex. C**. Likewise, Plaintiff's counsel through reasonable diligence could have and should have discovered this information prior to December 20, 2023, as they claim. Second, Defendant would be unduly prejudiced if leave to amend is granted. Defendant would have to retain several medical experts to

rebut Plaintiff's new claims and would be forced to petition the Court for an extension. Third, amendment may be futile as one of Defendant's medical experts noted that Plaintiff's first surgical treatment occurred within an appropriate time, within the forty-eight (48) hour standard of care.

      **WHEREFORE**, Defendant respectfully requests that this Honorable Court deny Plaintiff's Motion for Leave to File First Amended Complaint.

Dated: January 26, 2024.


                    Respectfully submitted,

                    */s/ Henry A. Yaniz*_____
                    **DAVID J. HORR**
                    Florida Bar No. 310761
                    dhorr@admiral-law.com
                    **JUAN C. PEREZ, JR.**
                    Florida Bar No. 91581
                    jperez@admiral-law.com
                    **LOURDES M. CARDELLE**
                    Florida Bar No. 1039886
                    lcardelle@admiral-law.com
                    **HENRY A. YANIZ**
                    Florida Bar No.: 1049169
                    hyaniz@admiral-law.com
                    HORR, SKIPP & PEREZ, P.A.
                    Two Datran Center, Suite 1700
                    9130 South Dadeland Boulevard
                    Miami, FL 33156
                    Telephone: (305) 670-2525
                    Facsimile: (305) 670-2526
                    ***Attorneys for Defendant***

CASE NO.: 1:23-CV-22080-RKA
Page 11

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on January 26, 2024, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/Henry A. Yaniz
**HENRY A. YANIZ**
Florida Bar No.: 1049169

## SERVICE LIST

**MICHAEL C. BLACK**
Florida Bar No.: 0056162
mblack@marlaw.com
MICHAEL C. BLACK, P.A.
Dadeland Square at the Greenery Mall
7700 N. Kendall Drive, Suite 505
Miami, FL  33156
Telephone: (305) 271-8301
Facsimile:  (305) 271-8302
*Attorneys for Plaintiff*

**THOMAS SCOLARO**
Florida Bar No.: 178276
scolaro@leesfield.com
**EVAN M. ROBINSON**
Florida Bar No.: 1031473
robinson@leesfield.com
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, FL 33133
Telephone: (305) 854-4900
Facsimile: (305) 854-8266
*Attorneys for Plaintiff*

**DAVID J. HORR**
Florida Bar No.:  310761
dhorr@admiral-law.com
**JUAN C. PEREZ, JR.**
Florida Bar No. 91581
jperez@admiral-law.com
**LOURDES M. CARDELLE**
Florida Bar No. 1039886
lcardelle@admiral-law.com
**HENRY A. YANIZ**
Florida Bar No.: 1049169
hyaniz@admiral-law.com
HORR, SKIPP & PEREZ, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant*

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156